UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRA NOVA GAS STATION, INC., a California Corporation, GOLDEN SUNRISE PROPERTIES LLC, a California Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>AMCO INSURANCE COMPANY, an Iowa Corporation, ALLIED INSURANCE COMPANY, an Iowa Corporation, and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No.: 16cv1565-JLS (DHB)<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>(ECF No. 16) |

Presently before the Court is Defendants Amco Insurance Company's and Allied Insurance Company's Motion for Judgment on the Pleadings ("MJP"). (ECF No. 16). Also before the Court are Plaintiffs' Response in Opposition to ("Opp'n"), (ECF No. 18), and Defendants' Reply in Support of ("Reply"), (ECF No. 19), Defendants' Motion. The Court vacated the scheduled hearing and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 20.) Having considered the Parties' arguments and the law, the Court **GRANTS** Defendants' Motion.

# BACKGROUND

Plaintiffs are the owners and operators of a gas station and convenience store located in Chula Vista, California. (Notice of Removal Ex. 1 ("Compl."), ¶ 7, ECF No. 1-2.) Defendants insured Plaintiffs' property via a written contract and insurance policy, which document Plaintiffs in turn attached to their Complaint. (*Id.*; *id.* Ex. A (the "Insurance Policy").)

The underlying dispute arises from Defendants' denial of coverage for an August 2014 incident where Plaintiffs' fuel tank was allegedly "damaged by the acts of Shell Oil and . . . its agents and employees." (*Id.* ¶ 8.) Specifically, Plaintiffs allege they "received a delivery of fuel from [their] supplier" and the person who "delivered the fuel . . . punctured the tank when he dropped the measurement stick in the tank to determine its fuel level." (Opp'n 2.) Defendants denied coverage for the incident, initially stating that the damage was caused by "long term wear and tear from other deliveries[,]" (*id.*; Reply 3 n.2), and later asserting that the Insurance Policy's "Negligent Work" exclusion bars Plaintiffs' recovery, (*see generally* MJP). Defendants now move for judgment on the pleadings based on the latter theory. (*See generally* MJP.)[1]

# LEGAL STANDARD

Any party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings attacks the legal sufficiency of the claims alleged in the complaint. *See Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog."). The Court must construe "all material allegations of the non-moving party as contained in the pleadings as true, and [construe] the pleadings in the light most favorable to the [non-moving] party." *Doyle v. Raley's Inc.*, 158 F.3d

---

[1] Plaintiffs bring causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. (Compl. ¶¶ 12–35.)

1012, 1014 (9th Cir. 1998). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

## ANALYSIS

The Parties do not dispute that the Insurance Policy and its Negligent Work Exclusion are enforceable and control the outcome of Defendants' Motion. Accordingly, the only question is whether the Negligent Work exclusion bars coverage for the particular cause of damage here at issue—the Shell delivery driver puncturing the fuel tank with her measuring device. The Court begins its analysis by looking to the plain text of the exclusion.

The relevant exclusion reads:

**c. Negligent Work**
Faulty, inadequate or defective:
(1) Planning, zoning, development, surveying, siting;
(2) Design, specifications, workmanship, work methods, repair, construction, renovation, remodeling, grading, compaction, failure to protect the property;
(3) Materials used in repair, construction, renovation or remodeling; or
(4) Maintenance;
of part or all of any property on or off the described premises.

(Insurance Policy 26, ECF No. 1-2, at 61.) Defendants argue that either of section (c)(2)'s exclusions for "workmanship" or "work methods" directly cover the damage here at issue. (MTD 5–8.) Plaintiffs disagree, noting that "the policy does not define the term 'work[,]'" and arguing—without citation to authority—that "it is clear the policy is not referring to work in the classic sense of one's labor" but instead "refers to 'work' in the sense of the result" of one's "labor or things." (Opp'n 7–8.) The Court agrees with Defendants.

As an initial matter, Plaintiffs include a paragraph discussing general California contract-law principles regarding ambiguity. (*Id.* at 6.) And although Plaintiffs do not

3

actually argue that the language here at issue is ambiguous, (*see id.* at 7–9), the Court nonetheless first addresses this issue of construction.

"The question of whether policy language is ambiguous is one of law." *Johnson v. Cont'l Ins. Cos.*, 202 Cal. App. 3d 477, 480 (1988). Ordinarily "[t]he 'clear and explicit' meaning of [contract] provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' . . . , controls judicial interpretation." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990) (citing Cal. Civ. Code §§ 1638, 1644). However, if there is "actual or apparent ambiguity" in the contract language then as a general matter the language will be construed in favor of the insured. *Johnson*, 202 Cal. App. 3d at 481. But "the predicate to interpreting ambiguities in favor of coverage is that the policy be reasonably susceptible to more than one interpretation. Where a policy clearly excludes coverage, [the court] will not indulge in tortured constructions to divine some theoretical ambiguity in order to find coverage." *Titan Corp. v. Aetna Cas. & Sur. Co.*, 22 Cal. App. 4th 457, 469 (1994) (emphasis in original) (citing *City of Laguna Beach v. Mead Reinsurance Corp.*, 226 Cal. App. 3d 822, 830–31 (1990)).

In the present case, it is true that the "Negligent Work" exception is syntactically nonsensical when either of Defendants' argued terms are utilized. For example, it makes sense to provide an exclusion for "faulty . . . siting . . . of part or all of any property on or off the described premises." (Insurance Policy 26, ECF No. 1-2, at 61 (emphasis added).) Or perhaps—while not grammatically perfect—for "inadequate . . . specifications . . . of part or all of any property on or off the described premises." (*Id.* (emphasis added).) However, "faulty . . . workmanship . . . of part or all of any property on or off the described premises" makes demonstrably less sense. (*Id.* (emphasis added).) The first possible construction, an exclusion for "faulty . . . workmanship . . . [created on behalf] of part or all of any property[,]" (*id.*), requires that there be, perhaps, automated machinery of some sort that would otherwise be covered by protection but somehow negligently produces work product. The second construction, an exclusion for "faulty . . . workmanship . . . [in

the creation or care] of part or all of any property[,]" (*id.*), is rendered completely redundant by the language that immediately follows: exclusions for "faulty . . . repair, construction, renovation, remodeling, grading, [or] compaction . . . of part or all of any property[,]" (*id.* (emphases added).) Finally, implicating these same problems—but even more nonsensical—is "defective . . . work methods . . . of part or all of any property on or off the described premises."[2] (*Id.* (emphasis added).)

However, just because something is poorly drafted does not therefore necessarily make it ambiguous. *See Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993) ("[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." (alteration in original) (one instance of emphasis removed, remaining emphasis in original) (quoting *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1265 (1992))); *Titan Corp.*, 22 Cal. App. 4th at 469 (noting that ambiguity results only when the language as a whole is "reasonably susceptible to more than one interpretation" (emphasis in original)). And in the present case, taken in concert, the varying aspects of the exclusion reveal a common theme: a purpose to exclude coverage regarding any negligent work that is performed in readying for use or maintaining the covered buildings or fixtures.[3] Viewed in this light, it is clear that the policy directly addresses and excludes the type of damage that here occurred. A third-party contractor was evaluating the fuel tank in order to maintain its usefulness to the business; i.e., without checking the fuel level Plaintiffs would not have known when to refill the tank except to wait for the pumps to literally run dry, thus costing Plaintiffs valuable business. Unfortunately, the third-party

---

[2] There is a third, most egregious, example: a purported exclusion for "faulty . . . failure to protect the property . . . of part or all of any property on or off the described premises." (*Id.* (emphasis added).)

[3] Although Defendants do not argue it, perhaps the most on-point provision is the exclusion for "faulty . . . [m]aintenance . . . of part . . . of any property on or off the described premises." (Insurance Policy 26 (emphasis added).) There are no syntactical problems in construction, and the whole purpose of the fuel tank here at issue is to hold fuel for customers so that Plaintiffs' business can turn a profit. Accordingly, checking fuel levels in order to keep the tank full and at profit-maximizing capacity is clearly "maintenance" of the otherwise-covered tank.

contractor allegedly used a negligent work method in maintaining the fixture's economic viability to Plaintiffs' business, which in turn harmed the fixture and Plaintiffs' business. However, this specific type of harm is excluded under Plaintiffs' policy, and thus the plain language of the exclusion establishes that Defendants have no liability in this suit.

Defendants' cited case of *Waldsmith v. State Farm Fire and Casualty, Co.* further confirms this conclusion. 232 Cal. App. 3d 693 (1991). In *Waldsmith*, the California Court of Appeal determined that the relevant insurance policy excluded damage to the plaintiff's home when the damage was caused by a landslide allegedly stemming from the city's negligent maintenance of a nearby water main. *Id.* at 695–99. Notably, the relevant exclusion specified that:

> We do not insure for loss consisting of one or more of the items below . . . . [¶] a. conduct, act, failure to act, or decision of any person, group, organization or government body whether intentional, wrongful, negligent, or without fault; [¶] b. <u>defect</u>, weakness, inadequacy, <u>fault</u> or unsoundness in: [¶] (1) planning, zoning development, surveying, siting; [¶] (2) design, specifications, <u>workmanship</u>, construction grading, compaction; [¶] (3) materials used in construction or repair or; [¶] (4) <u>maintenance</u> [¶] of any property including land structures or improvements of any kind whether on or off the residence premises.

*Waldsmith*, 232 Cal. App. 3d at 695–96 (footnote omitted) (emphases added). The *Waldsmith* Court ultimately held that "negligent maintenance of the water main appears to fall squarely under the exclusions . . . ." 232 Cal. App. 3d at 696.

Plaintiffs both attempt to distinguish *Waldsmith* and cite four out-of-circuit cases (three applying New York law and one applying Oklahoma law) in support of their construction of the relevant exclusion. (Opp'n 7–9.) The Court neither agrees with Plaintiff's argued distinctions nor finds the out-of-circuit authority persuasive. Although Plaintiff contends that *Waldsmith* concerned only government negligence in constructing and maintaining a water main, these distinctions do not negate the crucial factual similarities to this case: a third-party actor negligently performing a required action that

ultimately harms the plaintiff. And to the extent Plaintiffs correctly interpret their cited precedent from (1) several New York-based, intermediate appellate courts; (2) the Southern District of New York; and (3) the Tenth Circuit, none of these cases refute the clear language of the California contract here at issue and the similarity between *Waldsmith* and this case.

## CONCLUSION

Given the foregoing, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings. Because the insurance contract specifically excludes coverage for the underlying cause of Plaintiffs' claims, no amendment will be able to cure Plaintiff's pleading defect. *See Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001) ("In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must [first] show . . . benefits due under the policy were withheld . . . ."). Accordingly, this Order concludes the litigation in this matter. The Clerk **SHALL** close the file.

**IT IS SO ORDERED.**

Dated: June 26, 2017

Hon. Janis L. Sammartino
United States District Judge